

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States Attorney's Office*
*50 Main Street, Suite 1100*
*White Plains, NY 10606*

July 24, 2025

**BY ECF AND EMAIL**

The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    *United States v. Jahreek Bush*, 23 Cr. 545 (KMK)

Dear Judge Karas:

    The Government respectfully submits this letter in advance of the sentencing of defendant Jahreek Bush, scheduled for July 31, 2025 at 11:00 a.m. On July 26, 2024, following a five-day jury trial, the defendant was convicted of six counts of distribution of, or possession with intent to distribute, narcotics, or aiding and abetting the same, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), as well as 18 U.S.C. § 2 ("Counts One, Two, Three, Five, Six, and Seven," respectively) and one count of using, carrying, or possessing a firearm during and in relation to the drug trafficking crime charged in Count Seven, or aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 ("Count Eight").

    The applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is 117 to 131 months' imprisonment—that is, 57 to 71 months' imprisonment for Counts One, Two, Three, Five, Six and Seven, to be followed by a consecutive mandatory minimum term of 60 months' imprisonment for Count Eight—as correctly calculated by Probation in the Presentence Report ("PSR"). For the reasons explained below, a Guidelines sentence of 117 to 131 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    **I.**    **Factual Background**

    At trial, the evidence overwhelmingly established that on five occasions from January 3, 2023 through April 24, 2023, the defendant sold narcotics to undercover officers of, and confidential informants working with, the New York State Police ("NYSP"). (PSR ¶¶ 14-15). In particular, on January 3, 2023, the defendant sold a confidential informant and an undercover NYSP officer a substance that he billed as heroin, and which later tested positive for fentanyl.

(PSR ¶ 14(a); *see* Trial Tr. at 35-49, 356, 362-378.[1] On January 5, 2023, the defendant sold a NYSP undercover officer a substance he billed as heroin, which later lab tested positive for fentanyl. (PSR ¶ 14(b); *see* Trial Tr. at 49-72, 356, 362-378). On January 10, 2023, the defendant sold a NYSP undercover officer a substance that later lab tested positive for cocaine. (PSR ¶ 14(c); *see* Trial Tr. at 85-97, 356, 362-378). On each of these occasions, the defendant sold the narcotic substance at, out of, or inside a residence at 12 Smith Street in Monticello, New York (the "Residence"). (*Id.*; *see also* Trial Tr. 97-101). During the January 10, 2023 sale, the defendant retrieved the narcotics sold to the officer from the kitchen of the Residence. (PSR ¶ 14(c); *see* Trial Tr. at 85-97, 356, 362-378). On January 20, 2023, law enforcement executed a search warrant on the Residence and recovered from the kitchen over 27 grams of fentanyl, a digital scale, clear plastic bags, rubber bands, and glassine envelopes. (PSR ¶ 15; *see* Trial Tr. at 158-172, 373-374).

Despite the search of the Residence, in April 2023, the defendant went right back to selling drugs. In particular, on April 21, 2023, the defendant sold a confidential informant and an undercover NYSP officer a substance he billed as heroin, which later lab tested positive for fentanyl. (PSR ¶ 15(b); *see* Trial Tr. at 264-282, 356, 362-378). On April 24, 2023, the defendant sold a NYSP undercover officer as heroin a substance that later lab tested positive for fentanyl. (PSR ¶ 15(c); *see* Trial Tr. at 282-303, 356, 362-378).

The evidence at trial further established that on April 25, 2023, the defendant arrived at the appointed location for a sixth narcotics sale with a NYSP undercover officer, where he was arrested, and had on his person a fanny pack containing over 100 individually packaged foils containing fentanyl, as well as several individually wrapped packages containing cocaine, and a loaded firearm, specifically a 9mm semiautomatic handgun. (PSR ¶ 16; *see* Trial Tr. 184-203, 303- 311, 356, 362-378).

In total, the defendant distributed, or possessed with the intent to distribute, over 32 grams of fentanyl and over a gram of cocaine. (PSR ¶ 17; *see* Trial Tr. at 356, 362-378).

On July 26, 2024, a jury found the defendant guilty of Counts One, Two, Three, Five, Six, Seven, and Eight. Trial Tr. at 523-26.

## II. The Applicable Guidelines Range

Probation, in the PSR, correctly calculates the applicable Guidelines range as 57 to 71 months' imprisonment for Counts One, Two, Three, Five, Six, and Seven, followed by a mandatory minimum consecutive sentence of 60-months' imprisonment for Count Eight. (PSR ¶¶ 22-37, 66). In particular, Counts One through Three and Five through Seven are grouped together ("Group 1") under U.S.S.G. § 3D1.2(d) because the offense level is determined largely on the basis of the quantity of a substance involved and the offense behavior is ongoing or continuous in nature. (PSR ¶ 23). Pursuant to U.S.S.G. § 2D1.1(a)(5) as well as the Drug Quantity Table set forth in U.S.S.G. § 2D1.1(c)(9), the base offense level for Group 1 is 22 because the total converted drug weight of 82.51 kilograms is between 80 and 100 kilograms. (PSR ¶ 25). Two

---

[1] "Trial Tr." refers to the transcript of the defendant's trial, *United States v. Jahreek Bush*, 23 Cr. 545 (KMK).

levels are added, pursuant to U.S.S.G. § 2D1.1(b)(12), because the defendant sold drugs from a premises that he maintained for the purpose of manufacturing or distributing a controlled substance, resulting in a final offense level for Group 1 of twenty-four. (PSR ¶¶ 26, 30, 33).[2] Pursuant to 18 U.S.C. § 924(c)(1)(A)(i) and U.S.S.G. § 2K2.4, the Guidelines sentence for Count Eight is a consecutive mandatory term of 60 months' imprisonment, to follow the sentence for Group 1. (*See* PSR ¶¶ 24, 65, 66). The defendant is in Criminal History Category III (PSR ¶¶ 35-37), which yields an advisory range of 57 to 71 months' imprisonment for Counts One, Two, Three, Five, Six, and Seven, with a mandatory minimum sentence of 60 months' imprisonment on Count Eight, which must run consecutive to any sentence imposed on Counts One through Three and Five through Seven.

Probation recommends a below-Guidelines sentence of 96 months' imprisonment—*i.e.* 36 months' imprisonment for Counts One through Three and Five through Seven, followed by 60 months' imprisonment for Count Eight. (PSR at 21). The defendant seeks a downward variance, requesting a below-Guidelines sentence, based primarily on the defendant's difficult upbringing. Dkt. 106 ("Def. Sent'g Mem.") at 2.

### III. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). Thus, district courts should treat the Sentencing Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After calculating the applicable Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

---

[2] Paragraph 26 of the PSR applies the correct enhancement, resulting in the overall correct offense conduct calculation, but cites to incorrect sub-paragraphs of U.S.S.G. § 2D1.1. The correct citations are provided in this sentencing submission.

  (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B)  to afford adequate deterrence for criminal conduct;

  (C)  to protect the public from further crimes of the defendant; and

  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### IV. A Guidelines Sentence Is Appropriate

Under the above framework, the Government respectfully submits that a sentence within the Guidelines range of 117 to 131 months' imprisonment would be sufficient but not greater than necessary to comply with the purposes of sentencing, taking into account the factors set forth in 18 U.S.C. § 3553(a). In particular, the nature and seriousness of the offense, the need to promote respect for the law, the need to protect the public, and the need to promote adequate deterrence all cut in favor of a Guidelines sentence.

*First*, a Guidelines sentence would reflect the seriousness of the offense conduct, promote respect for the law, and provide just punishment for the offense. As described above, the defendant sold incredibly dangerous narcotics, including fentanyl, a particularly deadly substance that he often falsely claimed was heroin. To make matters worse, he carried a loaded gun to protect his product and profit. He sold narcotics over and over again and was convicted at trial for selling, and possessing with the intent to sell, over 32 grams of fentanyl. A Guidelines sentence is necessary to send the message that pumping such dangerous drugs into a community is unacceptable, especially when guns are involved.

*Second*, the need to promote specific deterrence and respect for the law, and to protect the public, support a Guidelines sentence. The pattern of conduct underlying this case spans months. And of particular note, the defendant kept right on selling drugs, even after law enforcement searched the Residence in late January and seized over 28 grams of fentanyl. That pattern of conduct, combined with the fact that the defendant was previously sentenced to a term of imprisonment, demonstrates that the defendant is difficult to deter and lacks even basic respect for the law. As Probation writes, "the defendant's history of violence, gun possession and drug trafficking [leaves Probation] deeply concerned for community safety," and his "reported mental health issues" only lead to "further worry[.]" (*See* PSR at 22). The Government shares this concern, which is amplified by the defendant's unwillingness to accept or engage in either mental health, emotional health, or drug treatment (*see* PSR ¶¶ 54, 56).

*Finally*, a Guidelines sentence would serve the purpose of general deterrence. It would send a message to the community that selling dangerous drugs—especially when guns are involved—will result in significant penalties. It would also tell other would-be drug dealers that

selling narcotics, particularly when carrying or otherwise using guns, will result in serious punishment.

By contrast, the mitigating factors identified by the defense do not support a downward variance. Although the defendant has faced significant hardship in his life, especially during his childhood and teen years, he is now almost 30 years old, and he has demonstrated very little progress towards changing his trajectory. More concerningly, although defense counsel highlights the defendant's mental health struggles, shares that he has had thoughts of suicide, and requests mental health assistance on the defendant's behalf, there is no indication that the defendant would accept or actively participate in such treatment. Indeed, in his interview with Probation, the defendant "disclaimed ever having any suicidal ideations . . . indicated that he believes he is mentally stable and does not believe emotional health treatment would be beneficial for him." (PSR ¶ 53).

In sum, a Guidelines sentence of 117 to 131 months' imprisonment would adequately balance the various considerations under § 3553(a) and would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

### V.  Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose on the defendant a Guidelines sentence of 117 to 131 months' imprisonment.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: _____
Margaret N. Vasu
Benjamin L. Levander
Assistant United States Attorneys
Tel: (914) 993-1926 / -1930

cc: Calvin H. Scholar, Esq.